**KAZEROUNI LAW GROUP, APC**
David J. McGlothlin, Esq. (SBN: 253265)
david@kazlg.com
Mona Amini, Esq. (SBN: 296829)
mona@kazlg.com
Gustavo Ponce, Esq. (SBN : 343430)
gustavo@kazlg.com
245 Fischer Avenue, Unit D1
Costa Mesa, California 92626
Telephone: (800) 400-6808
Facsimile:  (800) 520-5523

*Attorneys for Plaintiffs,*
*Richard Collins, Bonnie Joe, and Maxx Lyman*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICHARD COLLINS, BONNIE JOE, and MAXX LYMAN, individually and on behalf of others similarly situated, | Case No.: |
| Plaintiffs, | **CLASS ACTION COMPLAINT** |
| vs. | 1) **VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT, 47 U.S.C. § 227(C) ET SEQ.; AND** |
| BETTER DEBT SOLUTIONS LLC and LENDVIA LLC D/B/A LENDVIA FINANCIAL D/B/A ONE STREET FINANCIAL, | 2) **THE FLORIDA TELEPHONE SOLICITATION ACT, FLA. STAT. § 501.059** |
| Defendants. | **JURY TRIAL DEMANDED** |

//
//
//
//
//
//

- 1 -
CLASS ACTION COMPLAINT

## INTRODUCTION

1.     Plaintiffs Richard Collins ("Collins"), Bonnie Joe ("Joe") and Maxx Lyman ("Lyman") (together referred to as "Plaintiffs"), bring this action against Defendants Better Debt Solutions, LLC ("BDS"), and Lendvia LLC d/b/a Lendvia Financial d/b/a One Street Financial ("Lendivia") (together referred to as "Defendants"), to secure redress for violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227(c).

2.     Further, Plaintiff Joe brings this class action against Defendants for its violations of the Florida Telephone Solicitation Act, § 501.059 (hereinafter "the FTSA").

3.     This is a putative class action pursuant to the Telephone Consumer Protection Act, 47 U.S.C. § 227 et seq., (the "TCPA").

4.     In 1991 Congress passed the TCPA in response to complaints about certain telemarketing practices. In enacting the TCPA, Congress intended to give consumers a choice as to how creditors and telemarketers may call them and made specific findings that "[t]echnologies that might allow consumers to avoid receiving such calls are not universally available, are costly, are unlikely to be enforced, or place an inordinate burden on the consumer. TCPA, Pub.L. No. 102–243, § 11.

5.     The United States Court of Appeals for the Ninth Circuit has held that "[u]nsolicited telemarketing phone calls or text messages, by their nature, invade the privacy and disturb the solitude of their recipients. A plaintiff alleging a violation under the TCPA 'need not allege any *additional* harm beyond the one Congress has identified.'"  *Van Patten v. Vertical Fitness Grp.*, No. 14-55980, 2017 U.S. App. LEXIS 1591, at *12 (9th Cir. May 4, 2016) (quoting *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1549 (2016) (emphasis original)).

6.     Although a caller may obtain prior express consent from a consumer, prior express consent may nevertheless be revoked.

CLASS ACTION COMPLAINT

7.    The right to revocation is consistent with the common law principle that consent is revocable and honors the purpose of the TPCA.

8.    Defendant BDS is involved in business lending and consulting. Defendant BDS engages in unsolicited communication, harming thousands of consumers in the process.

9.    Defendant Lendivia is involved in business lending and consulting. Defendant Lendivia engages in unsolicited communication, harming thousands of consumers in the process.

10.    Plaintiffs make these allegations on information and belief, with the exception of those allegations that pertain to Plaintiffs, or to Plaintiffs' counsel, which Plaintiffs alleges on personal knowledge.

11.    While many violations are described below with specificity, this Complaint alleges violations of the statutes cited in its entirety.

12.    Unless stated otherwise, amongst the conduct engaged in by Defendants, much of it took place in the Central District of California.

13.    Any violations by Defendants were knowing, willful, and intentional, and Defendants did not maintain procedures reasonably adapted to avoid any such violation.

14.    Unless otherwise indicated, the use of Defendants' names in this Complaint includes all agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers of the Defendants' named herein.

15.    In response to Defendants' unlawful conduct, Plaintiffs seek an injunction requiring (a) Defendants to cease all unsolicited artificial and prerecorded voice phone calls and (b) Defendants to cease all unsolicited voice phone calls to numbers on the National Do-Not Call Registry ("DNC"), as well as an award of statutory damages to the members of the Classes (defined below) per violation, together with court costs, reasonable attorneys' fees, and treble damages (for

CLASS ACTION COMPLAINT

1  knowing and/or willful violations).

2  ## JURISDICTION AND VENUE

3      16.    This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331

4  because this case arises out of violations of federal law 47 U.S.C. § 227(c); and

5  supplemental jurisdiction over all other claims that are related to claims in the action

6  pursuant to 28 U.S.C. § 1367.

7      17.    Jurisdiction is also proper under 28 U.S.C. § 1332(d)(2) because

8  Plaintiffs allege a national class, which will result in at least one class member

9  belonging to a different state than that of Defendants.  Plaintiffs seek up to $1,500.00

10  (one-thousand-five-hundred dollars) in damages for each call-in violation of the

11  TCPA, which, when aggregated among a proposed class numbering in the tens of

12  thousands, or more, exceeds the $5,000,000.00 (five-million dollars) threshold for

13  federal court jurisdiction under the Class Action Fairness Act ("CAFA"). Therefore,

14  both the elements of CAFA diversity jurisdiction and CAFA jurisdiction are present.

15      18.    Because Defendants conduct business within the State of California, and

16  its principal place of business is located in Irvine, California thus personal

17  jurisdiction is established.

18      19.    Venue is proper in the United States District Court for the Central

19  District of California pursuant to 18 U.S.C. § 1391 because the conduct complained

20  of herein occurred within this judicial district and many of the acts and transactions

21  giving rise to this action occurred in this judicial district because:

22          (a)    Defendants are, and were, authorized to conduct business in this

23                 judicial district and have intentionally availed themselves of the

24                 laws and markets within this district;

25          (b)    Defendants are located in this judicial district;

26          (b)    Defendants do substantial business within this judicial district;

27          (d)    the harm to Plaintiffs originated from within this judicial district.

28

- 4 -

## **PARTIES**

20.     Plaintiff Collins is, and at all times mentioned herein was, a citizen and resident of the Stroudsburg, Pennsylvania.   Plaintiff Collins is, and at all times mentioned herein was, a "person," as defined by 47 U.S.C. § 153(39).

21.     Plaintiff Joe is, and at all times mentioned herein was, a citizen and resident of the Land O Lakes, Florida.   Plaintiff Joe is, and at all times mentioned herein was, a "person," as defined by 47 U.S.C. § 153(39).

22.     Plaintiff Lyman is, and at all times mentioned herein was, a citizen and resident of the Fargo, North Dakota.   Plaintiff Lyman is, and at all times mentioned herein was, a "person," as defined by 47 U.S.C. § 153(39).

23.     Defendant BDS, and at all times mentioned herein was, a limited liability company whose principal place of business and/or headquarters is located in Irvine, California.   Defendant BDS, and at all times mentioned herein was, a "person," as defined by 47 U.S.C. § 153(39).   At all times relevant herein, Defendant BDS conducted business in the State of California and within this judicial district.

24.     Defendant Lendvia, and at all times mentioned herein was, a limited liability company whose principal place of business and/or headquarters is located in Irvine, California.   Defendant Lendvia, and at all times mentioned herein was, a "person," as defined by 47 U.S.C. § 153(39).   At all times relevant herein, Defendant Lendvia conducted business in the State of California and within this judicial district.

## **TCPA BACKGROUND**

25.     In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry. In doing so, Congress recognized that "[u]nrestricted telemarketing … can be an intrusive invasion of privacy.…"   Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243 § 2(5) (1991) (codified at 47 U.S.C. § 227).

26.     The TCPA was designed to prevent calls and messages like the one described within this complaint, and to protect the privacy of citizens like Plaintiffs.

"Voluminous consumer complaints about abuses of telephone technology – for example, computerized calls dispatched to private homes – prompted Congress to pass the TCPA." *Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740, 744 (2012).

27. Specifically, the TCPA restricts telephone solicitations (*i.e.,* telemarketing), as well as violations of the TCPA's National Do-Not-Call provision of 47 C.F.R. § 64.1200(c).[1]

28. In enacting the TCPA, Congress intended to give consumers a choice as to how creditors and telemarketers may call them and made specific findings that "[t]echnologies that might allow consumers to avoid receiving such calls are not universally available, are costly, are unlikely to be enforced, or place an inordinate burden on the consumer." TCPA, Pub.L. No. 102-243, § 11. Toward this end, Congress found that:

> Banning such automated or prerecorded telephone calls to the home, except when the receiving party consents to receiving the call or when such calls are necessary in an emergency situation affecting the health and safety of the consumer, is the only effective means of protecting telephone consumers from this nuisance and privacy invasion.

*Id*. at § 12; *see also, Martin v. Leading Edge Recovery Solutions, LLC*, 2012 WL 3292838, at *4 (N.D. Ill. Aug. 10, 2012) (citing Congressional finding on TCPA's purpose).

29. As Judge Easterbrook of the Seventh Circuit explained in a TCPA case:

> The Telephone Consumer Protection Act […] is well known for its provisions limiting junk-fax transmissions. A less litigated part of the Act curtails the use of automated dialers and prerecorded messages to cell phones, whose subscribers often are billed by the minute as soon as the call is answered – and routing a call to voicemail counts as answering the call. An automated call to a landline phone can be an annoyance; an automated call to a cell phone adds expense to annoyance.

---

[1] According to the Federal Communications Commission's website, https://www.fcc.gov/consumers/guides/wireless-phones-and-national-do-not-call-list, Placing telemarketing calls to wireless phones is - and always has been - illegal in most cases.

CLASS ACTION COMPLAINT

*Soppet v. Enhanced Recovery Co., LLC*, 679 F.3d 637, 638 (7th Cir. 2012).

30.    47 C.F.R. § 64.1200(a)(2) additionally states, with respect to advertisement and telemarketing calls that "[n]o person or entity may . . . [i]nitiate or cause to be initiated, any telephone call that includes or introduces an advertisement or constitutes telemarketing, using an automatic telephone dialing system or an artificial or prerecorded voice, to any of the lines or telephone numbers described in paragraphs (a)(1)(i) through (iii) of this section, other than a call made with the prior express written consent of the called party . . . ."

31.    47 C.F.R. § 64.1200(f)(8) defines "prior express written consent" as "an agreement, in writing, bearing the signature of the person called that clearly authorizes the seller to deliver or cause to be delivered to the person called advertisements or telemarketing messages using an automatic telephone dialing system or an artificial or prerecorded voice, and the telephone number to which the signatory authorizes such advertisements or telemarketing messages to be delivered.

32.    The TCPA regulations promulgated by the FCC define "telemarketing" as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services." 47 C.F.R. § 64.1200(f)(12).  In determining whether a communication constitutes telemarketing, a court must evaluate the ultimate purpose of the communication.  See Golan v. Veritas Entm't, LLC, 788 F.3d 814, 820 (8th Cir. 2015).

33.    "'Telemarketing' occurs when the context of a call indicates that it was initiated and transmitted to a person for the purpose of promoting property, goods, or services."  Golan, 788 F.3d at 820 (citing 47 C.F.R. § 64.1200(a)(2)(iii); 47 C.F.R. § 64.1200(f)(12); *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 F.C.C. Rcd at 14098 ¶ 141, 2003 WL 21517853, at *49).

34.    The FCC has explained that calls motivated in part by the intent to sell property, goods, or services are considered telemarketing under the TCPA.  *See In re*

CLASS ACTION COMPLAINT

*Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd. 14014, ¶¶ 139-142 (2003). This is true whether call recipients are encouraged to purchase, rent, or invest in property, goods, or services during the call or in the future. *Id.*

35. In other words, offers "that are part of an overall marketing campaign to sell property, goods, or services constitute" telemarketing under the TCPA. *See In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd. 14014, ¶ 136 (2003).

36. If a call is not deemed telemarketing, a defendant must nevertheless demonstrate that it obtained the plaintiff's prior express consent. *See In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 30 FCC Rcd. 7961, 7991-92 (2015) (requiring express consent "for non-telemarketing and non-advertising calls.")

37. As recently held by the United States Court of Appeals for the Ninth Circuit: "Unsolicited telemarketing phone calls or text messages, by their nature, invade the privacy and disturb the solitude of their recipients. A plaintiff alleging a violation under the TCPA 'need not allege any additional harm beyond the one Congress has identified.'" *Van Patten v. Vertical Fitness Grp.*, No. 14-55980, 2017 U.S. App. LEXIS 1591, at *12 (9th Cir. May 4, 2016) (*quoting Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1549 (2016) (emphasis original)).

38. As of October 16, 2013, unless the recipient has given <u>prior express written consent</u>,[2] the TCPA and Federal Communications Commission ("FCC") rules under the TCPA generally:

---

[2] Prior express written consent means "an agreement, in writing, bearing the signature of the person called that clearly authorizes the seller to deliver or cause to be delivered to the person called advertisements or telemarketing messages using an automatic telephone dialing system or an artificial or prerecorded voice, and the telephone number to which the signatory authorizes such advertisements or telemarketing messages to be delivered." 47 C.F.R. § 64.1200(f)(8).

- Prohibit solicitors from calling residences before 8 a.m. or after 9 p.m., local time.

- Require that solicitors provide their name, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which that person or entity may be contacted.

- Prohibit solicitations to residences that use an artificial voice or a recording.

- Prohibit any call or text made using automated telephone equipment or an artificial or prerecorded voice to a wireless device or cellular telephone.

- Prohibit any call made using automated telephone equipment or an artificial or prerecorded voice to an emergency line (*e.g.*, "911"), a hospital emergency number, a physician's office, a hospital/health care facility/elderly room, a cellular telephone, or any service for which the recipient is charged for the call.

- Prohibit autodialed calls that engage two or more lines of a multi-line business.

- Prohibit unsolicited advertising faxes.

- Prohibit certain calls to members of the National Do Not Call Registry ("DNC").

39.    Furthermore, in 2008, the FCC held that "a creditor on whose behalf an autodialed or prerecorded message call is made to a wireless number bears the responsibility for any violation of the Commission's rules."  *In re Rules and Regulations Implementing the Telephone Consumer Protection Act, Declaratory Ruling on Motion by ACA International for Reconsideration*, 23 FCC Rcd. 559, 565, ¶ 10 (Jan. 4, 2008); *Birchmeier v. Caribbean Cruise Line, Inc.*, 2012 WL 7062748 (N.D. Ill., Dec. 31, 2012).  Accordingly, the entity can be liable under the TCPA for a call made on its behalf, even if the entity did not directly place the call.  Under those circumstances, the entity is deemed to have initiated the call through the person or

CLASS ACTION COMPLAINT

entity.

40. With respect to misdialed or wrong-number calls, the FCC recently clarified that "callers who make calls without knowledge of reassignment and with a reasonable basis to believe that they have valid consent to make the call should be able to initiate one call after reassignment as an additional opportunity to gain actual or constructive knowledge of the reassignment and cease future calls to the new subscriber." *In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, FCC 15–72, 30 F.C.C.R. 7961, ¶¶ 71-72 (July 10, 2015). "If this one additional call does not yield actual knowledge of reassignment, we deem the caller to have constructive knowledge of such." *Id.* Thus, any second call placed to a wrong number violates the TCPA.

41. The TCPA provides for damages in the amount of $500 for each negligent violation and treble damages of $1,500 for each knowing or willful violation. *See* 47 U.S.C. § 227(b)(3).

42. The TCPA, through the accompanying FCC regulations, 47 C.F.R. § 64.1200(c) *et seq.*, affords special protections for "residential subscribers" who register their phone numbers on the National Do Not Call Registry.

43. Since 2003, persons who register cell phone numbers on the National Do Not Call Registry have been considered to be "residential subscribers" for the purpose of 227(c)(5) and the National Do Not Call Registry. *In Re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 F.C.C. Rcd. 14014, 14039 (2003) ("we will presume wireless subscribers who ask to be put on the national do-not-call list to be 'residential subscribers.'")

44. 47 U.S.C. § 227(c)(5) and 47 C.F.R. § 64.1200(c) provide that each person who receives more than one call within a 12-month period on their phone, where that called party did not provide express written consent upon a clear and conspicuous disclosure from the telemarketer, after the phone number was registered on the National Do Not Call Registry for more than 31 days is entitled to recover a

1  penalty of $500 per call, and up to $1,500 per call if the TCPA is willfully or

2  knowingly violated.

3       45.    Decades after the TCPA passed into law, it is still unfortunately the case

4  that "[m]onth after month, unwanted telemarketing calls and texts top the list of

5  consumer complaints received by the [Federal Communications] Commission."

6  Omnibus TCPA Order, 30 FCC Rcd. 7961, 7964 (F.C.C. July 10, 2015).

7                        **FLA. STAT. § 501.059**

8       46.    The FTSA's Caller ID Rules require that persons making Telephonic

9  Sales Calls[3] transmit – to the consumer's caller identification service – a telephone

10  number that is capable of receiving telephone calls. And, unlike claims for damages

11  for text message solicitations the called party does not consent to receive, claims for

12  violations of the Caller ID Rules are equally applicable to all Telephonic Sales Calls

13  (phone calls, text messages, or voicemails), regardless of whether they are solicited or

14  consented to, and irrespective of whether the offending phone call, text message or

15  voicemail is traditional, automated, or recorded.

16       47.    In short, whenever a person either makes any type of Telephonic Sales

17  Call or causes one to be made, that person must ensure that a telephone number is

18  transmitted with that Telephonic Sales Call to the consumer's Caller ID service that is

19  capable of receiving telephone calls and connects to either the telephone solicitor or

20  the Defendants. Whenever Telephonic Sales Call are made and the phone number

21  that is transmitted to the caller identification service is not capable of receiving phone

22  calls and/or does not connect to the caller or seller because it is not configured for

23  two-way communication, the Caller ID Rules have been violated and the aggrieved

24  party may bring an action for liquidated damages, and injunctive and declaratory

25

26  ─────────────────

27  [3] "Telephonic Sales Call" is defined as "a telephone call, text message, or voicemail transmission to a consumer for the purpose of soliciting a sale of any consumer goods or services, soliciting an extension of credit for consumer goods or services, or obtaining information that will or may be used for the direct

28  solicitation of a sale of consumer goods or services or an extension of credit for such purposes." Fla. Stat. § 501.059(1)(j).

1  relief.

2      48.    Plaintiff Joe's cellular number is used for residential purposes and is
3  considered by her to be a residential number.

4      49.    Plaintiff Joe's telephone number ending in 0846 has received
5  Defendants' Telephonic Sales Calls.

6      50.    It is a violation of the FTSA to "make or knowingly allow a telephonic
7  sales call to be made if such call involves an automated system for the selection or
8  dialing of telephone numbers or the playing of a recorded message when a connection
9  is completed to a number without the prior express written consent of the called
10 party." Fla. Stat § 501.059(8)(A).

11     51.    The statute defines "telephonic sales call" as a "telephone call, text
12 message, or voicemail transmission to a consumer for the purpose of soliciting a sale
13 of any consumer goods or services, soliciting an extension of credit for consumer
14 goods services, or obtaining information that will or may be used for the direct
15 solicitation of a sale of consumer goods or services or an extension of credit for such
16 purposes." Fla. Stat. § 501.059(1)(I).

17     52.    A person will be defined as a "called party" if they are a "person who is
18 the regular user of the telephone number that receives a telephonic sales call," under
19 Fla. Stat. § 501.059(1)(A).

20     53.    An "unsolicited telephonic sales call" is one that is made other than in
21 direct response to the express request of the person who is called. under Fla. Stat. §
22 501.059(4)(K).

23                          **FACTUAL ALLEGATIONS**

24     54.    Plaintiffs incorporate by reference all of the above paragraphs of this
25 Complaint as though fully stated herein.

26     55.    In Defendants'  overzealous attempt to market its services and grow
27 significantly, Defendants knowingly and willfully (a) made (and continue to make)
28 unsolicited telemarketing phone calls, utilizing an artificial or prerecorded voice,

without the prior express written consent of the call recipients, and (b) unsolicited calls to persons who have registered their cellular telephone number on the DNC.

56.    Through this conduct, Defendants has invaded the personal privacy of Plaintiffs and other similarly situated consumers.

57.    At all times relevant, Defendants conducted business in the State of California, within this judicial district.

**Plaintiff Collins**

58.    At all times relevant, Plaintiff Collins resided in the State of Pennsylvania.

59.    At all relevant times, Plaintiff Collins was assigned, and was the owner of, a cellular telephone number of ending in 7000 ("Collins' Cell Phone"). Plaintiff Collins is the sole user and/or subscriber of Collins' Cell Phone.

60.    Plaintiff Collins was added to the DNC on May 12, 2020.

61.    Defendants are required to check the DNC before attempting to call. 47 U.S.C. § 227(c)(3)(F).

62.    On or around January 18, 2024, Plaintiff Collins received a phone call from Defendants, from 966-531-3231 to Plaintiff Collins' Cell Phone.

63.    Defendants left a pre-recorded message indicating Plaintiff Collins was pre-selected for a debt relief program.

64.    On or around January 19, 2024, Plaintiff Collins received another phone call from Defendants, from 866-602-3030, to Plaintiff Collins' Cell Phone. Again, Defendants left a pre-recorded message indicating Plaintiff Collins was pre-selected for a debt relief program.

65.    On or around February 8, 2024, Plaintiff Collins received a phone call from Defendants, from 888-730-6919, to Plaintiff Collins' Cell Phone. Again, Defendants left a pre-recorded message indicating Plaintiff Collins was pre-selected for a debt relief program.

66.    On the same day, Plaintiff Collins received another phone call from

CLASS ACTION COMPLAINT

Defendants, from 888-730-6919, to Plaintiff Collins' Cell Phone. Again, Defendants left a pre-recorded message indicating Plaintiff Collins was pre-selected for a debt relief program.

67.    On or around February 9, 2024, Plaintiff Collins received another phone call from Defendants, from 888-730-6919, to Plaintiff Collins' Cell Phone. Again, Defendants left a pre-recorded message indicating Plaintiff Collins was pre-selected for a debt relief program.

68.    On or around February 10, 2024, Plaintiff Collins, overwhelmingly concerned about Defendants' calls, called Defendants whom then emailed Plaintiff Collins confirming it was Defendants calling him and the email stated it was "Eli Manalo, a Senior Consultant with Lendvia Financial. I am in the office Monday through Friday until 5pm PST. My direct line is 949-516-7344." Who worked for Defendants BDS and Lendvia.

69.    Despite being on the DNC, Defendants made several unsolicited telemarketing calls to Plaintiff Collins on his personal cellular telephone, Collins' Cell Phone.

70.    Plaintiff Collins' cellular telephone number, Collins' Cell Phone, is used for personal and residential purposes.

71.    Plaintiff Collins did not provide Defendants with his cellular telephone number at any point in time, nor did he give permission for Defendants to call him.

72.    Plaintiff Collins did not give Defendants prior express invitation or express written consent for Defendants to make calls to Plaintiff Collins' cellular telephone number, Collins' Cell Phone, utilizing an artificial or prerecorded voice pursuant to 47 U.S.C. § 227 (b)(1)(A).

73.    Plaintiff Collins did not have an established business relationship with Defendants during the time of the telephone solicitations from Defendants.

74.    Plaintiff Collins did not have a personal relationship with Defendants at any point in time.

CLASS ACTION COMPLAINT

75.    Plaintiff Collins did not give Defendants prior express invitation or express written consent for Defendants to call Plaintiff Collins' cellular telephone number for marketing or solicitation purposes.

76.    It was evident to Plaintiff Collins that the voice messages he heard were prerecorded because, *inter alia*: (a) the generic content of the voice message; and (c) the tone, cadence, and inflection of the voice message, which sounded to Plaintiff Collins' ears like a prerecorded message, rather than a personal voice message that was placed personally for her by a live person.

77.    Based on Plaintiff Collins' own personal experience, the above-described call and/or voice message received from Defendants clearly sounded like a prerecorded voice message.

78.    Defendants placed at minimum two unsolicited calls to Plaintiff to Collins' Cell Phone, which was registered with the DNC, for at least 31 days prior to these unsolicited calls, in violation of the TCPA, including 47 C.F.R. § 64.1200(c).

79.    The above-described calls by Defendants to Plaintiff Collins constitute telephone solicitations pursuant to 47 U.S.C. § 227(b)(1)(a), including 47 C.F.R. § 64.1200(a)(2), as they were an attempt to promote or sell Defendants' services.

80.    Defendants unsolicited telephone calls to Plaintiff Collins constituted telemarketing and had a commercial purpose.

81.    Upon information and belief, Defendants did not make such telephone solicitations in error.

**Plaintiff Lyman**

82.    At all times relevant, Plaintiff Lyman resided in the State of North Dakota.

83.    At all relevant times, Plaintiff Lyman was assigned, and was the owner of, a cellular telephone number of ending in 3877 ("Lyman's Cell Phone"). Plaintiff is the sole user and/or subscriber of Lyman's Cell Phone.

84.    Plaintiff Lyman was added to the DNC on January 3, 2005.

85.    Defendants are required to check the DNC before attempting to call. 47 U.S.C. § 227(c)(3)(F).

86.    On or around August 28, 2023, Plaintiff Lyman received a phone call from Defendants, from 802-305-5976, to Plaintiff Lyman's Cell Phone. Defendants left a prerecorded voicemail with a callback number of 855-775-8814, which Plaintiff Lyman called and was met with a representative identifying themselves on behalf of Defendants. The representative also provided Plaintiff Lyman with the email address for Defendants "dbarroso@betterdebtsolutions.com".

87.    On or around August 29, 2023, Plaintiff Lyman received another phone call from Defendants, from 520-455-6533, to Plaintiff Lyman's Cell Phone. Defendants left the exact, identical prerecorded voicemail as the day before, further solidifying that the message was in fact prerecorded.

88.    On September 1, 2023, Plaintiff Lyman received an email from Defendants dbarroso@betterdebtsolutions.com which provided "[M]ore information on our company" and links to the web addresses: "www.betterdebtsolutions.com" and "https://www.lendvia.com/" as well as links to their Better Business Bureau profile and Google reviews for Defendants.

89.    Despite being on the DNC, Defendants made several unsolicited telemarketing calls to Plaintiff Lyman on his personal cellular telephone, Lyman's Cell Phone.

90.    Plaintiff Lyman's cellular telephone number, Lyman's Cell Phone, is used for personal and residential purposes.

91.    Plaintiff Lyman did not provide Defendants with his cellular telephone number at any point in time, nor did he give permission for Defendants to call him.

92.    Plaintiff Lyman did not give Defendants prior express invitation or express written consent for Defendants to make calls to Plaintiff Lyman's cellular telephone number, Lyman's Cell Phone, utilizing an artificial or prerecorded voice pursuant to 47 U.S.C. § 227 (b)(1)(A).

CLASS ACTION COMPLAINT

93.    Plaintiff Lyman did not have an established business relationship with Defendants during the time of the telephone solicitations from Defendants.

94.    Plaintiff Lyman did not have a personal relationship with Defendants at any point in time.

95.    Plaintiff Lyman did not give Defendants prior express invitation or express written consent for Defendants to call Plaintiff Lyman's cellular telephone number for marketing or solicitation purposes.

96.    It was evident to Plaintiff Lyman that the voice messages he heard were prerecorded because, *inter alia*: (a) the generic content of the voice message; and (c) the tone, cadence, and inflection of the voice message, which sounded to Plaintiff Lyman's ears like a prerecorded message, rather than a personal voice message that was placed personally for her by a live person.

97.    Based on Plaintiff Lyman's own personal experience, the above-described call and/or voice message received from Defendants clearly sounded like a prerecorded voice message.

98.    Defendants placed at minimum two unsolicited calls to Plaintiff to Lyman's Cell Phone, which was registered with the DNC, for at least 31 days prior to these unsolicited calls, in violation of the TCPA, including 47 C.F.R. § 64.1200(c).

99.    The above-described calls by Defendants to Plaintiff Lyman constitute telephone solicitations pursuant to 47 U.S.C. § 227(b)(1)(a), including 47 C.F.R. § 64.1200(a)(2), as they were an attempt to promote or sell Defendants' services.

100.    Defendants unsolicited telephone calls to Plaintiff Lyman constituted telemarketing and had a commercial purpose.

101.    Upon information and belief, Defendants did not make such telephone solicitations in error.

**Plaintiff Joe**

102.    At all times relevant, Plaintiff Joe resided in the State of Florida.

103.    At all relevant times, Plaintiff Joe was assigned, and was the owner of, a

cellular telephone number of ending in 0846 ("Joe's Cell Phone"). Plaintiff Joe is the sole user and/or subscriber of Joe's Cell Phone.

104. Plaintiff Joe was added to the DNC on September 24, 2007.

105. Defendants is required to check the National Do Not Call Registry before attempting to call. 47 U.S.C. § 227(c)(3)(F).

106. On or around November 11, 2023, Plaintiff Joe received phone call from Defendants, from 234-351-9272, to Joe's Cell Phone. Defendants left a pre-recorded message Defendants left a pre-recorded message with a call back number of 822-435-4428.

107. On or around November 16, 2023, Plaintiff Joe received phone call from Defendants, from 833-435-3663, to Joe's Cell Phone. Defendants left a pre-recorded message. Defendants left the exact, identical prerecorded voicemail as the November 11, 2023, voicemail, further solidifying that the message was in fact prerecorded.

108. On or around November 21, 2023, Plaintiff Joe received phone call from Defendants, from 844-740-1874, to Joe's Cell Phone. Defendants left the exact, identical prerecorded voicemail as the November 11, 2023, message.

109. On or around November 24, 2023, Plaintiff Joe received phone call from Defendants, from 833-431-3007, to Joe's Cell Phone. Defendants left a pre-recorded message with a call back number of 822-435-4428.

110. On or around November 25, 2023, Plaintiff Joe received phone call from Defendants, from 833-604-0953, to Joe's Cell Phone. Defendants left the exact, identical prerecorded voicemail as the November 24, 2023, message.

111. On the same day, Plaintiff Joe received another phone call from Defendants, again from 833-604-0958, to Joe's Cell Phone. Defendants left the exact, identical prerecorded voicemail as the November 25, 2023, message.

112. On the same day, once more, Plaintiff Joe received another phone call from Defendants, again from 833-604-0958, to Joe's Cell Phone. Defendants left the

1    exact, identical prerecorded voicemail as the November 25, 2023, message.

2        113.    On or around November 27, 2023, Plaintiff Joe received another phone

3    call from Defendants, again from 833-669-1535, to Joe's Cell Phone. Defendants left

4    the exact, identical prerecorded voicemail as the November 25, 2023, message.

5        114.    On the same day, Plaintiff Joe received another phone call from

6    Defendants, from 833-699-1547, to Joe's Cell Phone. Defendants left the exact,

7    identical prerecorded voicemail as the November 25, 2023, message.

8        115.    Again, on the same day, Plaintiff Joe received another phone call from

9    Defendants, again from 833-431-2967, to Joe's Cell Phone. Defendants left the exact,

10    identical prerecorded voicemail as the November 25, 2023, message.

11        116.    On or around November 28, 2023, Plaintiff Joe received another phone

12    call from Defendants, again from 833-604-1557, to Joe's Cell Phone. Defendants left

13    the exact, identical prerecorded voicemail as the November 25, 2023, message.

14        117.    On the same day, Plaintiff Joe received another phone call from

15    Defendants, from 833-604-2613, to Joe's Cell Phone. Defendants left the exact,

16    identical prerecorded voicemail as the November 25, 2023, message.

17        118.    On or around November 29, 2023, Plaintiff Joe received another phone

18    call from Defendants, again from 833-647-1633, to Joe's Cell Phone. Defendants left

19    the exact, identical prerecorded voicemail as the November 25, 2023, message.

20        119.    On the same day, Plaintiff Joe received another phone call from

21    Defendants, from 833-647-1658, to Joe's Cell Phone. Defendants left the exact,

22    identical prerecorded voicemail as the November 25, 2023, message.

23        120.    On or around November 30, 2023, Plaintiff Joe received another phone

24    call from Defendants, again from 833-723-1477, to Joe's Cell Phone. Defendants left

25    the exact, identical prerecorded voicemail as the November 25, 2023, message.

26        121.    On the same day, Plaintiff Joe received another phone call from

27    Defendants, from 833-723-1496 to Joe's Cell Phone. Defendants left the exact,

28    identical prerecorded voicemail as the November 25, 2023, message.

CLASS ACTION COMPLAINT

122.   On or around December 1, 2023, Plaintiff Joe received another phone call from Defendants, again from 833-759-1661, to Joe's Cell Phone. Defendants left the exact, identical prerecorded voicemail as the November 25, 2023, message.

123.   On the same day, Plaintiff Joe received another phone call from Defendants, again from 833-759-1661, to Joe's Cell Phone. Defendants left the exact, identical prerecorded voicemail as the November 25, 2023, message.

124.   On the same day, Plaintiff Joe received another phone call from Defendants, from 833-759-1669, to Joe's Cell Phone. Defendants left the exact, identical prerecorded voicemail as the November 25, 2023, message.

125.   For the fourth time, on the same day, Plaintiff Joe received another phone call from Defendants, from 833-782-0954, to Joe's Cell Phone. Defendants left the exact, identical prerecorded voicemail as the November 25, 2023, message.

126.   On or around December 4, 2023, Plaintiff Joe received another phone call from Defendants, again from 844-740-1992, to Joe's Cell Phone. Defendants left the exact, identical prerecorded voicemail as the November 25, 2023, message.

127.   On the same day, Plaintiff Joe received another phone call from Defendants, from 833-723-1508, to Joe's Cell Phone. Defendants left the exact, identical prerecorded voicemail as the November 25, 2023, message.

128.   On the same day, Plaintiff Joe received another phone call from Defendants, again from 833-723-1508, to Joe's Cell Phone. Defendants left a prerecorded voicemail message with the same call back number as all the previous calls.

129.   For the fourth time, on the same day, Plaintiff Joe received another phone call from Defendants, from 833-647-1667, to Joe's Cell Phone. Defendants left the exact, identical prerecorded voicemail as the November 25, 2023, message.

130.   Yet again, on or around December 5, 2023, Plaintiff Joe received more phone calls from Defendants, this time from 877-936-8372, to Joe's Cell Phone. Defendants left a pre-recorded voicemail, providing the same call back number as the

previous calls, 822-435-4428.

131. On the same day, Plaintiff Joe received another phone call from Defendants, from 844-648-0976, to Joe's Cell Phone. Defendants left a pre-recorded voicemail, providing the same call back number as the previous calls, 822-435-4428.

132. Despite being on the DNC, Defendants made several unsolicited telemarketing calls to Plaintiff Joe on his personal cellular telephone, Joe's Cell Phone.

133. Plaintiff Joe's cellular telephone number, Joe's Cell Phone, is used for personal and residential purposes.

134. Plaintiff Joe did not provide Defendants with his cellular telephone number at any point in time, nor did he give permission for Defendants to call her.

135. Plaintiff Joe did not give Defendants prior express invitation or express written consent for Defendants to make calls to Plaintiff Joe's cellular telephone number, Joe's Cell Phone, utilizing an artificial or prerecorded voice pursuant to 47 U.S.C. § 227 (b)(1)(A), as well as Fla. Stat. § 501.059(1)(g).

136. Plaintiff Joe did not have an established business relationship with Defendants during the time of the telephone solicitations from Defendants.

137. Plaintiff Joe did not have a personal relationship with Defendants at any point in time.

138. Plaintiff Joe did not give Defendants prior express invitation or express written consent for Defendants to call Plaintiff Joe's cellular telephone number for marketing or solicitation purposes.

139. It was evident to Plaintiff Joe that the voice messages he heard were prerecorded because, *inter alia*: (a) the generic content of the voice message; and (c) the tone, cadence, and inflection of the voice message, which sounded to Plaintiff Joe's ears like a prerecorded message, rather than a personal voice message that was placed personally for her by a live person.

140. Based on Plaintiff Joe's own personal experience, the above-described

call and/or voice message received from Defendants clearly sounded like a prerecorded voice message.

141.    Defendants placed at minimum two unsolicited calls to Plaintiff to Joe's Cell Phone, which was registered with the DNC, for at least 31 days prior to these unsolicited calls, in violation of the TCPA, including 47 C.F.R. § 64.1200(c).

142.    The above-described calls by Defendants to Plaintiff Joe constitute telephone solicitations pursuant to 47 U.S.C. § 227(b)(1)(a), including 47 C.F.R. § 64.1200(a)(2), as they were an attempt to promote or sell Defendants' services.

143.    Defendants unsolicited telephone calls to Plaintiff Joe constituted telemarketing and had a commercial purpose.

144.    Upon information and belief, Defendants did not make such telephone solicitations in error.

145.    Defendants failed to keep, maintain, implement, and/or enforce policies and procedures to ensure compliance with the FTSA and TCPA, and/or provide adequate oversight to ensure compliance with any policies it maintained.

146.    Compliance with the FTSA will not result in Defendants having to cease its business operations.

147.    Compliance with the FTSA will not result in Defendants having to alter the prices of goods or services it provides in the marketplace.

148.    Compliance with the FTSA will not force Defendants to seek regulatory approval from the State of Florida before undertaking any type of commercial transaction.

149.    Because Defendants' FTSA violations occurred in Florida, requiring Defendants' compliance with the FTSA will not have the practical effect of regulating commerce occurring wholly outside of Florida.

150.    The telemarketing text messages at issue caused Plaintiffs and putative Class Members harm. In addition to using their cellular data, storage, and battery life, they suffered invasion of privacy, aggravation, annoyance, frustration, distraction,

CLASS ACTION COMPLAINT

and their seclusion was intruded upon, forcing them to divert attention away from their work, home life and other activities, inconvenience, wasted time, risk of future harm, causing disruption to their work, sleep, and other activities, and violations of their substantive statutory rights under the TCPA and FTSA to remain free of unsolicited calls.

151.   Upon information and belief, at all relevant times, Defendants failed to establish and implement reasonable practices and procedures to effectively prevent telephone solicitations in violation of the regulations prescribed under 47 U.S.C. § 227(c)(5) and the FTSA.

152.   Upon information and belief, Defendants did not make the telephone solicitations in error.

153.   Through the aforementioned conduct, Defendants repeatedly violated the TCPA, 47 U.S.C. §§ 227, et seq., numerous times, as well as the FTSA.

**As to All Plaintiffs**

154.   Upon information and belief, at all relevant times, Defendants failed to establish and implement reasonable practices and procedures to effectively prevent telephone solicitations in violation of the regulations prescribed under 47 U.S.C. § 227(b)(1)(a), including 47 C.F.R. § 64.1200(a)(2) and 47 U.S.C. § 227(c)(5), including 47 C.F.R. § 64.1200(c).

155.   Upon information and belief, Defendants made the same or substantially similar above-described telephone solicitations *en masse* to thousands of consumers nationwide.

156.   Because Plaintiffs were each alerted when a call was made to their personal cellular telephones, the unsolicited telephone solicitations that Defendants transmitted to Plaintiffs' cellular device invaded Plaintiffs' privacy, caused aggravation, annoyance, intrusion upon on seclusion, and were a distraction and nuisance to Plaintiffs.

157.   Plaintiffs   were   personally   affected   and   damaged   by   Defendants'

aforementioned conduct because Plaintiffs suffered an invasion of a legally protected interest in privacy, which is specifically protected by the TCPA. Plaintiffs felt harassed, were frustrated, and distressed that Defendants annoyed Plaintiffs with unwanted telephonic solicitations without neither of Plaintiffs' prior express written consent.

158.    Defendants'  telephonic communications forced Plaintiffs and Class members to be deprived of the privacy and utility of their cellular telephones by forcing Plaintiffs and Class members to ignore or reject calls, silence their cellular telephones, and/or block incoming numbers, took up memory on Plaintiffs' cellular phone, and/or interrupted their desired use of their cellular telephones, as a result of Defendants'  repeated calls in violation of the TCPA.

159.    The TCPA was intended to give individuals control over how and where they receive telephonic communications. When Defendants made such calls to consumers without their consent and/or with prerecorded voices, and made calls to telephone numbers on the DNC, Defendants failed to respect the limitations imposed by the TCPA. In doing so, Defendants invaded Plaintiffs' and similarly situated individuals' privacy and violates the spirit and intent behind the TCPA.

160.    Through the above conduct, Defendants violated 47 U.S.C. §§ 227, *et seq*. and 47 C.F.R. § 64.1200, thereby invading Plaintiffs' and similarly situated individuals' privacy and violating their legally protected rights.

## STANDING

161.    Plaintiffs have standing under Article III of the Constitution of the United States of America because Plaintiffs' claims state: (a) valid injuries in fact; (b) which are traceable to the conduct of Defendants; and (c) are likely to be redressed by a favorable judicial decision. *See*, *Spokeo, Inc. v. Robins,* 136 S.Ct. 1540, 1547 (2016)*; Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).

### *Injury In Fact*

162.    Plaintiffs' injuries in fact must be both "concrete" and "particularized"

CLASS ACTION COMPLAINT

in order to satisfy the requirements of Article III of the Constitution, as articulated in *Spokeo. Spokeo*, 136 S.Ct. at 1547.

163.   For an injury to be "concrete" it must be "*de facto*", meaning that it actually exists.  *Eichenberger v. ESPN, Inc*, 876 F.3d 979, 982 (9th Cir. 2017). Here, Plaintiffs have suffered a concrete injury as Defendants made numerous unauthorized solicitation calls to Plaintiffs' respective cellular telephone numbers using an artificial and/or prerecorded voice, without any of Plaintiffs' prior express consent. Further, Defendants also placed calls to Plaintiffs while each of the Plaintiffs cellular telephone number were registered with the DNC. Such calls are a nuisance, an invasion of privacy, and an expense to Plaintiffs. All these injuries are *de facto* and concrete.

164.   For an injury to be "particularized" means that the injury must "affect the [p]laintiff in a personal and individual way." *Spokeo, Inc.*, 136 S.Ct. at 1543.  In this case, Defendants invaded Plaintiffs' privacy by making numerous unauthorized calls utilizing an artificial and/or prerecorded voice to Plaintiffs' cellular telephones without Plaintiffs' prior express consent, as well as Defendants placing calls to Plaintiffs while their cellular telephone number were registered with the DNC. Furthermore, Plaintiffs were disturbed, distracted, felt harassed and aggravated, by having to take time, reject or silence calls and dismiss alerts for unwanted calls from Defendants. All of these injuries are particularized and specific to Plaintiffs.

### *Traceable to Defendants' Conduct*

165.   The second prong required to establish standing at the pleadings phase is that Plaintiffs must allege facts to show that its injuries are traceable to the conduct of Defendants.

166.   The above calls are directly and explicitly linked to Defendants.  The voice messages each indicated they were from Defendants and had common phrases, and repeated the same words. Further, the Defendants emailed Plaintiffs after some of the calls confirming it was them calling Plaintiffs. The above-described calls from

Defendants are the source of Plaintiffs' injuries caused by Defendants. Therefore, Plaintiffs has illustrated facts above that show that Plaintiffs' injuries are traceable to the conduct of Defendants.

### *Redressability*

167.   The third prong to establish standing at the pleadings phase requires Plaintiffs to allege facts to show that the injury is likely to be redressed by a favorable judicial opinion.

168.   In the present case, Plaintiffs' Prayer for Relief below includes a request for damages for each call made by Defendants, as authorized by statute for Defendants' violations of 47 U.S.C. §§ 227, et seq., and 47 C.F.R. § 64.1200. The statutory damages were set by Congress and specifically redress the financial damages suffered by Plaintiffs.

169.   Further, Plaintiff Joe's Prayer for Relief for the FTSA Class below includes a request for damages for each call made by Defendants, as authorized by statute for Defendants' violations of the FTSA. The statutory damages were set to specifically redress the financial damages suffered by Plaintiff Joe in Florida.

170.   Because on the foregoing, Plaintiffs have Article III standing to sue Defendants on the claims stated herein.

### **CLASS ACTION ALLEGATIONS**

171.   All Plaintiffs brings this action pursuant to Rule 23(a), Rule 23(b)(2), and Rule 23(b)(3) of the Federal Rules of Civil Procedure on behalf of themselves individually and on behalf of the Class defined as follows:

> **Prerecorded Voice Class**
> All persons within the United States (1) whom received any telephone call/s from Defendants, its employees and/or agents, (2) for the purpose promoting Defendants' goods or services, (3) to said person's cellular telephone (4) made through the use of an artificial or prerecorded voice and (5) without prior express consent in writing from said person to receive such calls (6) within the four years prior to the filing of this action.

**<u>Do-Not Call Registry Class:</u>**

All persons within the United States (1) registered on the National Do-Not-Call Registry for at least 31 days, (2) who received more than one telephone solicitation call (3) made by or on behalf of Defendants, (4) for the purpose of promoting Defendants' goods or services, (5) within any twelve-month period, (6) within the four years prior to the filing of the Complaint.

172.    Plaintiff Joe brings this action pursuant to Rule 23(a), Rule 23(b)(2), and Rule 23(b)(3) of the Federal Rules of Civil Procedure on behalf of herself individually and on behalf of the Class defined as follows:

**<u>FTSA Class</u>**

All persons within the State of Florida who received any solicitation/telemarketing phone calls or text messages from Defendants using an automated system for the selection or dialing of telephone numbers to said person's cellular telephone and such person had not previously consented to receiving such calls within the four years prior to the filing of this Complaint.

173.    Defendants and their employees or agents are excluded from the Classes.

174.    Plaintiffs reserve the right to modify the definition of the Classes as warranted as facts are learned in further investigation and discovery.

175.    Plaintiffs do not know the number of members in each of the Class, but upon information and belief, but believes the Class members number in the thousands, if not more.  Thus, this matter should be certified as a Class action to assist in the expeditious litigation of this matter.

176.    Plaintiffs and members of the Class were harmed by the acts of Defendants in at least the following ways: Defendants, either directly or through its agents, illegally contacted Plaintiffs and the members of the Class via their telephones, for solicitation purposes, and/or utilizing an artificial or prerecorded voice, without prior express consent, thereby invading the privacy of said Plaintiffs and the Class members.  Plaintiffs and the Class members were damaged thereby.

177.    Further, Plaintiffs and members of the Class were harmed by the acts of Defendants in at least the following ways: Defendants, either directly or through its

agents, illegally contacted Plaintiffs and the Class members via their telephones, whether cellular telephones or otherwise, for solicitation purposes, thereby invading the privacy of said Plaintiffs and the Class members whose cellular telephone numbers were on the DNC. Plaintiffs and the Class members were damaged thereby.

178. This suit seeks only damages and injunctive relief for recovery of economic injury on behalf of the Class, and it expressly is not intended to request any recovery for personal injury and claims related thereto.

179. Plaintiffs reserve the right to expand the definition of the Classes to seek recovery on behalf of additional persons as warranted as facts are learned in further investigation and discovery.

180. The joinder of the Class members is impractical and the disposition of their claims in the Class Action will provide substantial benefits both to the parties and to the Court. The Class can be identified through Defendants' records or Defendants' agents' records.

181. There is a well-defined community of interest in the questions of law and fact involved affecting the parties to be represented. The questions of law and fact common to the Class predominate over questions which may affect individual Class members, including the following:

    a. Whether, within the four years prior to the filing of this Complaint, Defendants or its agents placed marketing calls to cellular telephone numbers;

    b. Whether Defendants made phone calls to consumers using an artificial or pre-recorded voice to any telephone number assigned to a cellular phone service;

    c. Whether, within the four years prior to the filing of this Complaint, Defendants or its agents placed more than one telephone solicitation to the members of the Class whose telephone numbers were on the DNC

and who had neither an established business relationship nor personal relationship with Defendants;

d. Whether Defendants obtained prior express written consent to place telephone solicitations to Plaintiffs or the Class members' telephones;

e. Whether Defendants' conduct violated the TCPA;

f. Whether Defendants willfully or knowingly violated the TCPA;

g. Whether Defendants conduct violated the FTSA;

h. Whether Defendants willfully or knowingly violated the FTSA and its regulations;

i. Whether Plaintiffs and the Class members were damaged thereby, and the extent of damages for such violation;

j. Whether Class members are entitled to treble damages based on the willfulness of Defendants' conduct;

k. Whether Plaintiffs and the members of the Class are entitled to attorney fees and costs for Defendants' acts and conduct;

l. Whether Defendants and their agents should be enjoined from engaging in such conduct in the future; and

m. Whether Plaintiffs and the Class are entitled to any other relief.

182. As a person who received telephone solicitation from Defendants, who did not have an established business relationship or personal relationship with Defendants, who did not provide Defendants prior express invitation or permission to receive telephone solicitations, and who did not provide Defendants prior express consent to receive telephone calls utilizing an artificial or prerecorded voice, Plaintiffs is asserting claims that are typical of the Class. Plaintiffs will fairly and adequately represent and protect the interests of the Class in that Plaintiffs have no known interests antagonistic to any member of the Class.

183. Plaintiffs and the members of the Class have all suffered irreparable harm and invasion of a legally protected interest in privacy, which is specifically

addressed and protected by the TCPA, (and the FTSA as to Plaintiff Joe), as a result of the Defendants' unlawful and wrongful conduct. Absent a class action, the Class will continue to be damaged and face irreparable harm. In addition, these violations of law will be allowed to proceed without remedy and Defendants will likely continue such illegal conduct. Because of the size of the individual Class member's claims, few, if any, Class members could afford to seek legal redress for the wrongs complained of herein.

184. The interest of Class members in individually controlling the prosecution of separate claims against Defendants is small because the maximum statutory damages in an individual action for violation of privacy are minimal. Management of these claims is likely to present significantly fewer difficulties than those presented in many class claims.

185. Plaintiffs will fairly and adequately represent and protect the interests of the Class and have retained counsel competent and experienced in complex class actions, including claims involving violations of the Telephone Consumer Protection Act and FTSA

186. Plaintiffs have no interest antagonistic to those of the Class, and Defendants has no defenses unique to Plaintiffs.

187. This class action is appropriate for class certification because Defendants has acted or refused to act on grounds generally applicable to the Class as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the Class and making final injunctive relief appropriate with respect to the Class as a whole.

188. Defendants' practices challenged herein apply to and affect the Class members uniformly, and Plaintiffs' challenge of those practices hinges on Defendants' conduct with respect to the Class as a whole, not on facts or law applicable only to Plaintiffs.

189. This case is also appropriate for class certification because class

proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy given that joinder of all parties is impracticable.

190.   The damages suffered by the individual members of the Class will likely be relatively small, especially given the burden and expense of individual prosecution of the complex litigation necessitated by Defendants' actions.

191.   Thus, it would be virtually impossible for the individual members of the Class to obtain effective relief from Defendants' misconduct.

192.   Even if members of the Class could sustain such individual litigation, a class action would still be preferable because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint.

193.   By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court. Economies of time, effort and expense will be fostered, and uniformity of decisions ensured.

194.   Defendants have acted on grounds generally applicable to the Class, thereby making appropriate final injunctive relief and corresponding declaratory relief with respect to the Class as a whole.

## CAUSES OF ACTION

### COUNT I

### VIOLATIONS OF THE TCPA

### 47 U.S.C. §§ 227, *ET SEQ.*

### (ON BEHALF OF EACH PLAINTIFF AND THE CLASS)

195.   Plaintiffs incorporate by reference all of the above paragraphs of this Complaint as though fully stated herein.

196.   The foregoing acts and omissions of Defendants constitute numerous and multiple negligent violations of the TCPA, including but not limited to each and every one of the above-cited provisions of 47 U.S.C. §§ 227, et seq.

KAZEROUNI
LAW GROUP, APC

197.   Defendants and/or their agents placed at several unauthorized calls to Plaintiffs' cellular telephones using an artificial and/or prerecorded voice without Plaintiffs' prior express consent.

198.   As a result of Defendants' conduct and pursuant to § 227(c)(5) of the TCPA, Plaintiffs and the other members of the putative Class were harmed and are each entitled to a minimum of $500.00 in damages for each violation and a maximum of $1,500 in statutory damages for willful violations.

199.   As a result of Defendants' violations of the TCPA, Plaintiffs are entitled to and seek injunctive relief prohibiting such conduct by Defendants violating the TCPA in the future pursuant to 47 U.S.C. § 227(b)(3)(A).

200.   Plaintiffs also seek an award of attorneys' fees and costs on behalf of Plaintiffs and the Class.

**COUNT II**

**VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT**

**REGARDING THE NATIONAL DO-NOT CALL REGISTRY**

**47 U.S.C. § 227(C)(5)**

**47 C.F.R. § 64.1200(C)**

201.   Plaintiffs incorporate by reference all of the above paragraphs of this Complaint as though fully stated herein.

202.   At all relevant times, Defendants knew or should have known that its conduct as alleged herein violated the TCPA.

203.   Defendants made unsolicited and unauthorized phone calls to the cellular telephones of Plaintiffs and the Class members, cellular telephones which were registered with the DNC, for the purpose of marketing products and/or services to Plaintiffs and the Class.

204.   Defendants knew that it did not have prior express written consent to make these calls and knew or should have known that it was calling cellular numbers

KAZEROUNI LAW GROUP, APC

1  on the DNC in violation of the TCPA.

2  205.  Defendants willfully or knowingly allowed telemarketing calls to be

3  placed to Plaintiffs' and the Class Members' cellular telephone numbers on the DNC.

4  For instance, Defendants could have determined from a review of its own business

5  records and the DNC that it could not contact Plaintiffs and/or Class members yet

6  disregarded such information and placed illegal and unwanted solicitation calls.

7  206.  Because Defendants knew or should have known that Plaintiffs' and the

8  Class Members' cellular telephone numbers were on the DNC, the Court should

9  treble the amount of statutory damages available to Plaintiffs and the other members

10  of the putative Class pursuant to § 227(b)(3) of the TCPA.

11  207.  As a result of Defendants' violations, Plaintiffs and the Class Members

12  are entitled to an award of $1,500.00 in statutory damages, for each and every willful

13  or knowing violation, pursuant to 47 U.S.C. § 227(b)(3)(B) and 47 U.S.C. §

14  227(b)(3)(C) or in the alternative an award of $500.00 in statutory damages, for each

15  and every negligent violation, pursuant to 47 U.S.C. § 227(b)(3)(B).

16  208.  Plaintiffs and the Class are also entitled to and seek injunctive relief,

17  pursuant to 47 U.S.C. § 227(c)(5)(A), prohibiting such conduct in the future.

18  209.  Plaintiffs also seek an award of attorneys' fees and costs on behalf of

19  Plaintiffs and the Class.

20  ### COUNT III

21  **VIOLATIONS OF THE FLORIDA TELEPHONE CONSUMER PROTECTION ACT**

22  **FLA. STAT. § 501.059**

23  **(ON BEHALF OF PLAINTIFF JOE AND THE FTSA CLASS)**

24  210.  Plaintiff Joe re-alleges and incorporates the foregoing allegations as if

25  fully set forth herein.

26  211.  Defendants – or third parties directed by Defendants – used equipment

27  having the capacity to dial numbers without human intervention to make non-

28  emergency telephone calls to the cellular telephones of Plaintiffs and the other

KAZEROUNI LAW GROUP, APC

members of the Class in violation of Fla. Stat § 501.059(8)(A).

212.   Under Fla. Stat § 501.059(1)(G), prior consent includes the signature of the called party, the telephone of the called party, as well as clear authorization to the person making or allowing the telephonic sales call to make the call. Defendants did not have prior express consent to call the cell phones of Plaintiffs and the other members of the putative Class when these telephonic sales calls were made. *Id.*

213.   Defendants has, therefore, violated Fla. Stat § 501.059(8)(A) AND Fla. Stat § 501.059(1)(G) by using an automatic telephone dialing system to make non-emergency telephone calls to the cell phones of Plaintiffs and the other members of the putative Class without their prior express written consent.

214.   Defendants knew that it did not have prior express consent to make these calls and knew or should have known that it was using equipment that at constituted an automatic telephone dialing system. The violations were therefore willful or knowing.

215.   As a result of Defendants conduct and pursuant to Fla. Stat § 501.059(10)(B), Plaintiff Joe and the other members of the putative Class were harmed and are each entitled to a minimum of $500.00 in damages for each violation

## PRAYER FOR RELIEF

**WHEREFORE**, as to the ***Prerecorded Voice Class*** and ***Do-Not Call Registry Class***, Plaintiffs respectfully requests the Court grant Plaintiffs and the Class members the following relief against Defendants:

- An order certifying this matter as a class action with Plaintiffs as Class Representative and designating Plaintiffs' counsel as Class Counsel.

- Injunctive relief prohibiting Defendants from engaging in such conduct in the future pursuant to 47 U.S.C. § 227(b)(3)(A);

- Statutory damages of $500.00 for Plaintiffs and each member the Class for each and every one of Defendants' violations of 47 U.S.C. §§ 227, et seq. pursuant to 47 U.S.C. § 227(b)(3)(B);

CLASS ACTION COMPLAINT

1    • Statutory damages of $1,500.00 for Plaintiffs and each member the Class
2      for each and every one of Defendants' willful or knowing violations of 47
3      U.S.C. §§ 227, et seq. pursuant to 47 U.S.C. § 227(b)(3)(C);
4    • An award of attorneys' fees and costs to counsel for Plaintiffs and the Class;
5    • Pre-judgment and post-judgment interest on monetary relief; and
6    • All other and further relief as the Court deems necessary, just, and proper.
7    **WHEREFORE,** as to the ***FTSA Class***, Plaintiff Joe respectfully
8    requests the Court grant Plaintiff Joe and the Class members the following
9    relief against Defendants:
10   • An order certifying this matter as a class action with Plaintiff Joe as Class
11     Representative for the FTSA Class, and designating Plaintiff Joe's counsel
12     as Class Counsel.
13   • An order declaring that Defendants' actions, as set out above, violate the
14     FTSA, and its implementing regulations;
15   • Statutory damages of $500 per text message, for each FTSA violation;
16   • Willful damages at $1,500 per call, for each FTSA violation;
17   • Injunctive relief prohibiting Defendants from engaging in such conduct in
18     the future;
19   • An award of attorneys' fees and costs to counsel for Plaintiff and the Class;
20   • Pre-judgment and post-judgment interest on monetary relief; and;
21   • All other and further relief as the Court deems necessary, just, and proper.
22   ///
23   ///
24   ///
25
26
27
28

CLASS ACTION COMPLAINT

## **DEMAND FOR JURY TRIAL**

216.    Plaintiffs, individually and on behalf of the Classes, demands a jury trial on all issues so triable.

Dated: June 11, 2024                          Respectfully submitted,

                                              **KAZEROUNI LAW GROUP, APC**


                                         By:    */s/ Gustavo Ponce*
                                                DAVID J. MCGLOTHLIN, ESQ.
                                                MONA AMINI, ESQ.
                                                GUSTAVO PONCE, ESQ.
                                                *Attorneys for Plaintiff*

CLASS ACTION COMPLAINT